UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUSTYN CYR and SHEILA CYR, | : : : |
| Plaintiffs, | : Case No. 3:16-cv-085 : : |
| v. | : : March 20, 2017 |
| CSAA FIRE & CASUALTY INSURANCE COMPANY, | : : : |
| Defendant. | : |

**MEMORANDUM OF DECISION DENYING DEFENDANTS'
<u>MOTION TO DISMISS [DKT. 16]</u>**

I. <u>Introduction</u>

The Plaintiffs, Justyn Cyr and Sheila Cyr (the "Cyrs"), bring this action in a three-count complaint against Defendant CSAA Fire & Casualty Insurance Company ("CSAA"). The Plaintiffs allege breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and Unfair Trade Practices Act ("CUTPA"), as a result of CSAA's decision to decline coverage for damage to the basement walls of Plaintiffs' home (the "Property") under a homeowners insurance policy (the "Policy"). CSAA has moved to dismiss Counts Two and Three of the Complaint. [Dkt. 16]. Plaintiffs oppose the motion. [Dkt. 21]. For the reasons that follow, Defendant's Motion to Dismiss is DENIED.

1

II. <u>**Factual Background**</u>

The Cyrs own and reside at 35 Old Kent Road South, Tolland, CT 06084.  [Dkt. 1-1 ("Compl.") ¶ 1].  CSAA provided homeowners insurance to the Cyrs for this residence.  *Id.* at ¶ 3.  Over time, the Cyrs observed visible cracking patterns in the basement walls if their home.  *Id.* at ¶ 5.  Having seen news reports regarding deteriorating concrete issues, the Cyrs engaged a structural engineer to inspect their basement.  *Id.* at ¶ 6.  The engineer informed them that the cracks were due to a chemical reaction in the concrete that would ultimately render the walls unstable and recommended that the concrete be replaced.  *Id.* at ¶ 7.

In October 2015, the Cyrs made a claim to CSAA for coverage of the damages caused by the chemical reaction based on the report made by the structural engineer.  *Id.* at ¶ 8.  The claim was based on the terms of the insurance coverage, which specifically stated that one of the "Perils Insured Against" was the "risk of direct physical loss to property."  *Id.* at ¶ 9.  Additionally, the homeowner's insurance policy covers "collapse," which the plaintiffs contend includes progressive deterioration of the concrete in the basement walls.  *Id.* at ¶ 11.  CSAA disagreed with the Cyrs, citing contrary policy provisions to deny the claim on October 23, 2015.  *Id.* at ¶¶ 12-13.

In support of their assertion that this denial was made in bad faith, the Plaintiffs allege, "[T]he Defendant in its discretion, unreasonably and in bad faith, sought out other policy provisions and interpreted these and

other policy provisions in a manner for the purpose of denying benefits despite the aforementioned provisions of the policy conferring benefits." [Compl. ¶ 16].  The Complaint provided no additional details indicating why the Cyrs believed that their denial was unreasonable or made in bad faith.

Plaintiffs allege Defendant is aware of "the numerous claims and lawsuits that have arisen in this section of Connecticut" regarding deteriorating concrete, through Defendant's participation in the Insurance Services Office, Inc. ("ISO"), which collects data regarding insurance claims.  *Id.* at ¶¶ 19, 21.  Based on the aforementioned information received from ISO, the Plaintiffs contend that Defendant has attempted to deny coverage for claims such as the Plaintiffs' based on other purported exclusions, despite provisions within the policy that provide coverage for chemical reaction and collapse, to which there is no chemical reaction exclusion.  *Id.* at ¶ 22.  The Defendant provided a false and misleading denial of coverage that was contrary to other sections of its policy that provide coverage for chemical reaction and collapse.  *Id.* at ¶ 23.  Nowhere in the policy does it exclude coverage for chemical reaction.  *Id.*

Defendant has "regularly denied claims in similar manners or on similar grounds or other grounds," in a "business practice intended to put the Plaintiffs at a disadvantage."  *Id.* at ¶¶ 24-25.  Plaintiffs assert Defendant's denial of Plaintiffs' claim contravenes the terms of the policy, is "oppressive, unethical, immoral, and unscrupulous," and directly and proximately caused Plaintiffs to suffer "losses and damages they are

rightfully owed under the homeowner's insurance policy" as well as litigation expenses and loss of interest.  Id. at ¶¶ 26-27.

Plaintiffs brought this action in the Superior Court of Connecticut on December 14, 2015, alleging breach of contract, breach of the covenant of good faith and fair dealing, and violation of Connecticut's Unfair Trade Practices Act ("CUTPA").  [Dkt. 1-1].  The case was removed to this Court on January 20, 2016.  [Dkt. 1].

III.   Legal Standard

To survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff" when deciding a motion to dismiss.  *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).  A court may, however, "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

IV. <u>Discussion</u>

Defendant moved to dismiss the Complaint on March 1, 2016.  [Dkt. 16].  It asks the Court to dismiss Counts Two and Three of Plaintiffs' Complaint for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  [Dkt. 16 at 1-2].  The Court addresses each disputed count in turn below.

A. <u>Count Two:  Bad Faith</u>

Defendant asserts Plaintiffs' claim for breach of the covenant of good faith and fair dealing must be dismissed for failure to allege the requisite mindset.  [Dkt. 17 at 5].

Connecticut requires bad faith claims to establish that "(1) two parties entered into a contract under which plaintiff reasonably expected to benefit; (2) the benefit was denied or obstructed by the other party's actions; and (3) the other party's actions were taken in bad faith."  *Van Dorsten v. Provident Life & Acc. Ins. Co.*, 554 F. Supp. 2d 285, 287 (D. Conn. 2008).  A party acts in bad faith if his or her conduct is "not simply bad judgment or negligence, but rather . . . the conscious doing of a wrong because of dishonest operating with furtive design or ill will."  *Martin v. Am. Equity Ins. Co.,* 185 F. Supp. 2d 162, 166-68 (D. Conn. 2002).

To establish the first element of bad faith, Plaintiff must show that he is entitled to recover under a policy before he can recover for the bad faith denial or processing of an insurance claim.  *Bergen v. Standard Fire Ins. Co.,* No. CV93044099S, 1997 WL 809957, at *15 (Conn. Super. Ct. Dec. 31,

1997).  In turn, the burden of proving that there is an exception to a coverage provision is on the insurer.  *O'Brien v. John Hancock Mut. Life Ins. Co.,* 143 Conn. 25, 29 (1955); *Capstone Bldg. Corp.*, 308 Conn. 760, 788 n.24 (2013).  If the exception's application is "'fairly debatable,' i.e., if the insurer had some arguably justifiable reason for refusing to pay or terminating the claim," a bad faith claim cannot survive.  *McCulloch v. Hartford Life & Accident Ins. Co.,* 363 F. Supp. 2d 169, 177 (D. Conn. 2005).

Conversely, an insurer may not deny an insurance claim on the basis of unsupported determinations resulting from its arbitrary failure or refusal to properly perform its claims examination function.  *Uberti v. Lincoln Nat'l Life Ins. Co.*, 144 F. Supp. 2d 90, 104 (D. Conn. 2001).  Thus, in order to maintain a bad faith denial of insurance coverage claim, a plaintiff must show that it is entitled to coverage under the policy which was unjustifiably denied.

To satisfy the final element of a bad faith claim, "most Connecticut trial judges have held that a plaintiff is required to plead specific facts to show how the defendant's actions were done in bad faith and in what manner the conduct was done with ill purpose, an intent to defraud or deceive, or bad motive."  *Jazlowiecki v. Nationwide Ins. Co. of Am.,* HHDCV-1260366188, 2014 WL 279600, *2 (Conn. Super. Ct. Jan. 3, 2014) (striking bad faith claim for lack of specific factual allegations of improper motive).  "Allegations of a mere coverage dispute or negligence by an insurer in conducting an investigation will not state a claim of bad faith

6

against an insurer." *Martin*, 185 F. Supp 2d at 164.  Nor are "bald assertions" that the defendant acted with a "sinister motive" sufficient to withstand a motion to dismiss.  *Vega v. Sacred Heart Univ., Inc.*, 836 F. Supp. 2d 58, 65 (D. Conn. 2011).

    Here, Plaintiffs support their bad faith claim by asserting multiple acts of impropriety.  They claim that Defendant "unreasonably and in bad faith, sought out other policy provisions and interpreted these and other policy provisions in a manner for the purpose of denying benefits." [Compl. ¶ 16].  Plaintiffs specifically allege in Count Three of the Complaint facts which elaborate on this claim.  There, the Plaintiffs allege that Defendant attempted to exploit their lack of sophistication by denying coverage on the basis of inapplicable provisions of the policy without regard to other provisions of the policy which afforded coverage for the specific event for which the Plaintiffs sought payment.  *Id.* at ¶ 22.  The Complaint states that based on information received from ISO, Defendant denied the Plaintiffs' claim, even though the Plaintiffs' policy provides coverage for the chemical reaction which is causing the erosion of and may cause the collapse of the basement walls of their home.  *Id.* at ¶¶ 22-23.  The Complaint can be fairly read to assert that Defendant denied Plaintiffs' claim based on a false and misleading reference to provisions of its policy despite its knowledge of other applicable provisions that specifically provide coverage and for which there is no exclusion.  *Id.*

**Although they do not expressly allege that the Defendants were motivated by financial benefit, the denial of coverage patently inures to the Defendant's financial benefit and thus the Complaint can fairly be read to assert such a motivation.**

### B. Count Three:  CUIPA and CUTPA Claims

**Plaintiffs allege Defendant improperly denied their covered claim based on advice from ISO that other insurers had denied other similar claims.  [Compl. ¶¶ 21-22].  Plaintiffs also allege that, "based on information and belief, [Defendant] has regularly denied claims in similar manners or on similar grounds or other grounds."  *Id*. ¶ 24.**

**Defendant seeks a dismissal of the Plaintiffs' CUTPA claim, asserting that membership in the ISO did not provide Defendant with improper knowledge upon which Defendant based its own coverage determinations.  [Dkt. 17 at 11-12].  Defendant states that the ISO allegation does not constitute an unfair claim settlement practice under the Connecticut Unfair Insurance Practices Act ("CUIPA"), and accordingly does not support a CUPTA claim.  *Id*. at 15.  Defendant also states Plaintiffs have not alleged a "general business practice" sufficient to support a claim under CUIPA, but rather have alleged only one instance of purportedly improper conduct (the denial of their own Policy), as well as a vague assertion that "upon information and belief" Defendant has "regularly" denied "similar" claims.  *Id*. at 14.  Plaintiffs do not claim that Defendant violated CUTPA through CUIPA because it was a member of or obtained information from ISO.**

8

Instead Plaintiffs claim that the Defendant violated CUIPA because it regularly used the information it obtained from the ISO to deny claims which were covered by its policies.

The Plaintiffs must show that the Defendant engaged in insurance practices prohibited by law to maintain a CUTPA claim.  Connecticut law prohibits any person from "engag[ing] in this state in any trade practice which is defined in section 38a-816 as, or determined pursuant to sections 38a-817 and 38a-818 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."  Conn. Gen. Stat. § 38a-815.  "[C]onduct by an insurance broker or insurance company that is related to the business of providing insurance can violate CUTPA only if it violates CUIPA." *Conn. v. Acordia, Inc.*, 310 Conn. 1 at 9 (2012).  "[T]he legislative determinations as to unfair insurance practices embodied in CUIPA are the exclusive and comprehensive source of public policy in this area."  *Id.* at 12.

> Connecticut unfair claim settlement practices include:
>
> Committing or performing with such frequency as to indicate a general business practice any of the following:
> (A) is representing pertinent facts or insurance policy provisions relating to coverages at issue;
>
> *  *  *
> (N) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim . . . .

Conn. Gen. Stat. §38a-816.  Where a plaintiff alleges unfair claim settlement practices under CUIPA, the plaintiff must assert the unfair

practice is committed "with such frequency as to indicate a general business practice."  Conn. Gen. Stat. § 38a-816(6).  "A single act of insurance misconduct" is insufficient to establish a CUIPA unfair claim settlement practice.  *Davis v. Globe Life & Acc. Ins. Co.*, 3:12-cv-01583, 2013 WL 5436907, *6 (D. Conn. Sept. 27, 2013).

The Court construes the Complaint to allege not only that that the Defendant was a member of ISO, but that on the advice of ISO it categorically denied concrete decay claims citing exclusions, despite specific chemical reaction and collapse provisions in its own policy which did afford coverage for the loss suffered by the Plaintiffs and other policyholders in an attempt to deceive the policyholders into believing that policy did not insure against their loss.[1]

Plaintiffs allege that Defendant has engaged in a general business practice of denying concrete deterioration claims despite the chemical reaction and collapse coverage provisions of its own policies, citing provisions relied upon by other ISO associated insurers.  Such allegations are sufficient to maintain a CUTPA claim.  *See Panchera v. Kemper*

---

[1] This interpretation is based on Plaintiffs' allegations that the "Defendant, based on information and belief, has knowledge of the numerous claims and lawsuits that have arisen in this section of Connecticut via ISO for issues concerning deteriorating concrete;" "Based on the aforementioned information received via ISO, the Defendant has attempted to deny coverage for claims such as the Plaintiffs' based on other purported exclusions, despite provisions within the policy that provide coverage for the chemical reaction that occurred and collapse;" and "Defendant . . . has regularly denied claims in similar manners or on similar grounds or other grounds, including other matters handled by the undersigned with the Defendant."  [Dkt. No. 1 at ¶¶ 25, 27, 28.]

*Independence Ins. Co.*, 3:13-cv-1009 (JBA), 2014 WL 1690387, at *5 (D. Conn. Apr. 29, 2014) (denying a motion to dismiss a CUTPA through CUIPA claim where an insurer denied coverage based on an ISO interpretation of standard policy language despite the fact that courts had previously ruled that ISO misinterpreted the policy language and that such provision did afford coverage).

V.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Counts Two and Three of the Complaint [Dkt. 16] is DENIED.

                                                                                 _____/s/_____
                                                                     Hon. Vanessa L. Bryant
                                                                     United States District Judge

Dated at Hartford, Connecticut: March 20, 2017